UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
PORTLAND DIVISION

| | |
|---|---|
| LINDA TRUEMAN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|     v. | )   Civil No. |
| | ) |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, | ) |
| | ) |
|       Defendant. | ) |

## COMPLAINT

Now comes the Plaintiff, LINDA TRUEMAN ("Plaintiff"), by her attorneys, GISELE M. NADEAU and MARK D. DEBOFSKY, MARIE E. CASCIARI, and DEBOFSKY, SHERMAN & CASCIARI, P.C., and complaining against the defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("Defendant"), states as follows:

## JURISDICTION

1. Jurisdiction of this Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), and in particular, ERISA § 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans, which, in this case, involves a long-term disability ("LTD") group insurance policy underwritten and administered by Defendant for the benefit of United Technologies Corporation ("UTC") and its affiliated companies' employees.

2. This action may be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

1

3. The ERISA statute provides, at ERISA § 503 (29 U.S.C. § 1133), a mechanism for administrative or internal appeals of benefit denials and terminations. Those avenues of appeal have been exhausted.

## VENUE

4. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

5. Venue is also proper in the District of Maine, Portland Division pursuant to Local Rule 3(b) because Plaintiff resides in York County, Maine.

## NATURE OF ACTION

6. This case seeks payment of LTD benefits due under a group policy of LTD insurance, group policy number GF3-810-258966-016 ("LTD Policy") (a true and correct copy of which is attached hereto and by that reference incorporated herein as "Exhibit A"), which is sponsored by UTC, and underwritten and administered by Defendant to provide LTD benefits to UTC and its affiliated companies' employees. This action is brought as a claim for benefits pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)).

## PARTIES

7. At all times relevant hereto, Plaintiff, who was born in 1974, is and was a resident of North Berwick, Maine, located in York County, Maine.

8. At all times relevant hereto, the LTD Policy was an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to her employment with an affiliate of UTC, Plaintiff received coverage under the LTD Policy as a "participant" as

defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).  This claim relates to LTD benefits under the foregoing  LTD Policy.

9. At all times relevant hereto, Defendant was the underwriter and administrator of the LTD Policy; and was doing business within the District of Maine, Portland Division.

## RELEVANT POLICY PROVISIONS

10. Plaintiff is eligible to receive LTD benefits following her satisfaction of the LTD Policy's 180-day elimination period and continuing through age 65, the end of the maximum benefit period based on her age of 39 as of her disability onset date, which would be reached in February 2039.  Ex. A, at 5 & 9.  Plaintiff is entitled to receive LTD benefits in the amount of $2,194.40 per month, calculated at the buy-up rate of 60% of her monthly pre-disability earnings of $3,657.33.  Ex. A, at 4.  Plaintiff's LTD benefits are also reduced by other deductible sources of income she receives, which totaled $1,791.00 per month in Social Security disability income ("SSDI") and dependent benefits until her daughter turned age 18 in September 2017, resulting in a net monthly LTD benefit of $403.40; and thereafter went down to $1,194.00 per month in just SSDI benefits, resulting in a net monthly LTD benefit of $1,000.40 starting October 2017. Ex. A, at 34.

11. The provisions of the LTD Policy relevant to Plaintiff's claim for LTD benefits provide as follows:

### SECTION 2 – DEFINITIONS

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, air traffic controllers and crewmember of an aircraft…

    i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 24 months of Disability the

      Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

  ii.  thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Any Occupation"** means any occupation, for which the Covered Person is reasonably fitted considering his training, education, experience, age, physical and mental capacity, and the salary of which at least 80% of the Covered Person's Basic Monthly Earnings.

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

Ex. A, at 11-16.

## SECTION 4 – LONG TERM DISABILITY COVERAGE

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;
2. Regular Attendance of a Physician; and
3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupation license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

Ex. A, at 30.

**STATEMENT OF FACTS**

12. Plaintiff was employed by Pratt & Whitney, an affiliate of UTC, on a full-time basis starting 2001. Plaintiff worked as a Shipping Clerk for approximately two years, and then as a Bench Mechanic, which is ordinarily performed at the light or medium exertional level.

13. Approximately 12 years into her employment with UTC, Plaintiff was forced to cease working effective August 3, 2013 due primarily to Ehlers-Danlos Syndrome ("EDS"), along with other co-morbid impairments including, but not limited to, fibromyalgia, irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD"), depression, anxiety, and chronic fatigue and pain, for which she takes opioid medication on a daily basis.

14. Plaintiff has not returned to work in any capacity since she ceased working on August 3, 2013.

15. Subsequent to stopping working, Plaintiff submitted a claim for short-term disability ("STD") benefits, which was approved by Defendant.

16. On November 22, 2013, Defendant notified Plaintiff that it had terminated her STD benefits as of October 15, 2013 because of an alleged "lack of clinical evidence to support restrictions and limitations precluding [her] from performing [her] job duties."

17. On January 17, 2014, Plaintiff appealed Defendant's decision to terminate her STD benefits, and Defendant subsequently resumed paying STD benefits through January 31, 2014, the end of the maximum STD benefit period.

18. Plaintiff also submitted a claim for LTD benefits, which was approved by Defendant starting February 1, 2014, following her satisfaction of the LTD Policy's elimination period, under the "own occupation" definition of disability.

19. Around that time, Plaintiff concurrently submitted a claim for SSDI benefits at Defendant's behest, and with the assistance of counsel to whom she was referred by Defendant, which was also approved. The Social Security Administration ("SSA") determined that Plaintiff was disabled due to hypermobile type EDS with pain, IBS, and GERD beginning August 2, 2013, thus signifying that her medical condition resulted in her inability to engage in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (definition of "disabled" under the Social Security Act). Plaintiff started receiving SSDI benefits as of February 2014, and Plaintiff continues to receive those benefits to this day. The SSA's notice of award of benefits and entire administrative file have been supplied to Defendant.

20. Defendant has financially benefited from Plaintiff's award of SSDI benefits because it reduces the amount of LTD benefits it owes to Plaintiff based on coordination of benefits provisions in the LTD Policy that reduce LTD benefit payments by the amount of SSDI benefits paid to Plaintiff. Ex. A, at 30 & 34.

21. Only six months after approving Plaintiff's LTD claim, Defendant reversed its decision and terminated her LTD benefits effective July 31, 2014.

22. Defendant's decision followed three full days of covert surveillance it attempted to have obtained of Plaintiff, even though she was never seen, and two deficient medical reviews performed by frequently-retained doctors who never evaluated Plaintiff.

23. Plaintiff appealed Defendant's LTD benefit termination through the undersigned counsel on December 8, 2014 (with supplemental documentation submitted on February 3, 2015), as a result of which Defendant overturned its termination of Plaintiff's LTD benefits.

24. Defendant's decision to reinstate benefits was based on two medical reviews – one finding that Plaintiff was physically limited from performing her light/medium occupation and another finding that she suffered from "marked psychiatric impairment."

25. On January 14, 2016, Defendant notified Plaintiff of her continued eligibility for LTD benefits under the LTD Policy's "any occupation" definition of disability.

26. Not long thereafter, in July 2016, Defendant attempted to obtain four more full days of covert surveillance of Plaintiff, but most of the resulting footage depicted her mother and/or sister rather than Plaintiff. The only surveillance of Plaintiff herself was approximately two minutes during only one of the days of surveillance; and it depicted Plaintiff standing in her backyard.

27. Despite the absence of any material improvement in Plaintiff's medical condition, on May 30, 2017, Defendant notified Plaintiff that it no longer deemed her disabled and was once again terminating her LTD benefits effective May 31, 2017.

28. Defendant's benefit determination was based exclusively on the results of a biased and deficient medical review performed by a frequently-retained doctor who never examined Plaintiff, as well as the results of a flawed and deficient medical examination of Plaintiff.

29. On December 6, 2017, Plaintiff again appealed Defendant's decision to terminate her LTD benefits through the undersigned counsel, and submitted additional medical evidence even further supporting her ongoing inability to perform any work on a full-time basis.

30. On February 9, 2018, Defendant notified Plaintiff that it was upholding its termination of her LTD benefits. Defendant's decision was based exclusively on the results of another biased and deficient file review performed by frequently retained doctor who also never

examined Plaintiff, as well as a biased vocational assessment that failed to take all of the relevant evidence into consideration. Rather than providing the Plaintiff with a "full and fair review" as required by ERISA § 503 (29 U.S.C. § 1133), Defendant's review was cursory, overlooked critical evidence, and structured to cherry-pick only the evidence that favored the termination of benefits while ignoring the overwhelming, contrary evidence. In fact, Defendant's entire claim appeal process, including its repeated terminations of Plaintiff's STD and LTD benefits over less than four years and disregard of her SSDI benefit award, was biased and self-serving, and placed Defendant's financial considerations ahead of an objective and fair claim evaluation. Defendant thus failed to meet its fiduciary and statutory obligations under ERISA to insure an accurate claim decision and to apply "higher-than-marketplace quality standards" as required by the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).

31. All required pre-litigation appeals seeking the payment of LTD benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

32. The evidence submitted to Defendant establishes that Plaintiff has been continuously unable to return to work since August 2, 2013 and has thus met and continues to meet the LTD Policy's definition of disability since that date due to her EDS, fibromyalgia, IBS, GERD, depression, anxiety, and chronic fatigue and pain (amongst other conditions). Plaintiff is therefore entitled to receive all LTD benefits due from May 31, 2017, the date Defendant last terminated those benefits, to the present with interest; and those benefit payments should continue under the terms of the LTD Policy for so long as Plaintiff continues to meet the terms and conditions for the receipt of such.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant, and that

the Court order Defendant to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B.  That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment at an appropriate rate pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

C.  That the Court order Defendant to continue to pay Plaintiff LTD benefits for so long as she continues to meet the LTD Policy's terms and conditions;

D.  That the Court award Plaintiff attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E.  That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which she may be entitled.

Dated: May 21, 2018                               Respectfully submitted,

/s/ Gisele M. Nadeau
_____
Gisele M. Nadeau
Local Counsel for Plaintiff
Linda Trueman

/s/ Mark D. DeBofsky
/s/ Marie E. Casciari
_____
Mark D. DeBofsky
Counsel for Plaintiff
Linda Trueman

Gisele M. Nadeau (local counsel)
55 Pleasant Avenue
Portland, Maine 04103
Voice: (207) 671-0327
Email: nadeau@nadeauerisadisability.com

Mark D. DeBofsky (seeking *pro hac vice* admission)

Marie E. Casciari (seeking *pro hac vice* admission)
DeBofsky, Sherman & Casciari, P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
Voice: (312) 561-4040
Fax: (312) 929-0309
Email: mdebofsky@debofsky.com
Email: mcasciari@debofsky.com